1  David M. Lilienstein, SBN 218923
   david@dllawgroup.com
2  Katie J. Spielman, SBN 252209
   katie@dllawgroup.com
3  **DL LAW GROUP**
   345 Franklin St.
4  San Francisco, CA 94102
   Telephone: (415) 678-5050
5  Facsimile: (415) 358-8484

6  Attorneys for Plaintiff,
   ANNA F.

7
                    UNITED STATES DISTRICT COURT
8
                    NORTHERN DISTRICT OF CALIFORNIA
9

10

11 | ANNA F.                                    | Case No.
12 |            Plaintiff,                      | **PLAINTIFF ANNA F.'S COMPLAINT FOR BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA); BREACH OF FIDUCIARY DUTY; ENFORCEMENT AND CLARIFICATION OF RIGHTS; PREJUDGMENT AND POSTJUDGMENT INTEREST; AND ATTORNEYS' FEES AND COSTS**
13 | v.
14 | ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY dba ANTHEM BLUE CROSS; GOOGLE LLC WELFARE BENEFIT PROGRAM; GOOGLE LLC; and DOES 1 through 10,
15 |
16 |
17 |            Defendants.
18

19

20     Plaintiff, ANNA F. herein sets forth the allegations of this Complaint against Defendants
21 ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY dba ANTHEM BLUE
22 CROSS; GOOGLE LLC WELFARE BENEFIT PROGRAM; GOOGLE LLC; and DOES 1 through 10.
23                           **PRELIMINARY ALLEGATIONS**
24                                  **JURISDICTION**
25     1.   Plaintiff brings this action for relief pursuant to Section 502 (a) (1) (B) and Section 502
26 (a) (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1132 (a) (1) (B).
27 This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA Section 502 (e) and
28 (f), 29 U.S.C. Section 1132 (e), (f), and (g) and 28 U.S.C. Section 1331 as it involves a claim made by

---
1
**COMPLAINT**                                                              **CASE NO.**

Plaintiff for employee benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. Section 1331 as this action involves a federal question.

2. This action is brought for the purpose of recovering benefits under the terms of an employee benefit plan and enforcing Plaintiff's rights under the terms of an employee benefit plan.

3. Plaintiff seeks relief, including but not limited to: past mental health benefits in the correct amount related to Defendant's improper denial of Plaintiff's claim; prejudgment and post judgment interest; general and special damages; and attorneys' fees and costs.

**PARTIES**

4. Plaintiff ANNA F. is, and at all times relevant was, a resident of California.

5. At all relevant times, ANNA F. participated in the GOOGLE LLC WELFARE BENEFIT PLAN ("the Plan"), an employee welfare benefit plan within the meaning of ERISA section 3(1), 29 U.S.C. § 1002(1), sponsored by Defendant GOOGLE LLC ("Google").

6. Mental Health benefits under the Plan were at all relevant times administered by Defendant ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY dba ANTHEM BLUE CROSS ("Anthem").

7. Anthem is a health insurance provider authorized to transact and currently transacting the business of insurance in the State of California.

8. Google was a Plan Administrator.

9. At all relevant times, the Plan was an insurance plan that offered, *inter alia*, mental health benefits to employees and their beneficiaries, including Plaintiff. This action involves mental health claims denied by the Plan's mental health claim administrator.

**FACTS**

10. The Plan guarantees, warrants, and promises "Mental Health Services" for members and their beneficiaries, including but not limited to: health care services, mental health care, and treatment at issue herein.

11. F.F. is ANNA F.'s daughter, and was, at all relevant times, a beneficiary of the Plan.

12. At all relevant times, the Plan was in full force and effect.

13. The Plan guarantees, promises, and warrants benefits for medically necessary covered health care services.

14. The Plan defines "Medically Necessary" health care services as those that are:
> 1. Appropriate and necessary for the diagnosis or treatment of the medical condition;
> 2. Clinically appropriate in terms of type, frequency, extent, site and duration and considered effective for the patient's illness, injury or disease.
> 3. Provided for the diagnosis or direct care and treatment of the medical condition;
> 4. Within standards of good medical practice within the organized medical community;
> 5. Not primarily for your convenience, or for the convenience of your *physician* or another provider;
> 6. Not more costly than an equivalent service, including the same service in an alternative setting, or sequence of services that is medically appropriate and is likely to produce equivalent therapeutic or diagnostic results in regard to the diagnosis or treatment of the patient's illness, injury, or condition; and
> 7. The most appropriate procedure, supply, equipment or service which can safely be provided. The most appropriate procedure, supply, equipment or service must satisfy the following requirements:
> a. There must be valid scientific evidence demonstrating that the expected health benefits from the procedure, supply, equipment or service are clinically significant and produce a greater likelihood of benefit, without a disproportionately greater risk of harm or complications, for you with the particular medical condition being treated than other possible alternatives; and
> b. Generally accepted forms of treatment that are less invasive have been tried and found to be ineffective or are otherwise unsuitable.

15. The Plan guarantees coverage for inpatient and outpatient treatment of mental health conditions.

16. California's Mental Health Parity Act, Health & Safety Code §1374.72 ("the Parity Act"), as well as the Federal Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA") specifically require that health care plans provide medically necessary diagnosis, care and treatment for the treatment of specified mental health illnesses at a level equal to the provision of benefits for physical illnesses.

17. Both the Parity Act and the MHPAEA prohibit health care service plans from limiting benefits or coverage for mental health and substance use disorders to short-term or acute treatment. They also prohibit health insurers that use so-called level of care guidelines to determine mental health claims from using insurer-generated, proprietary guidelines and instead require the use of guidelines developed by nonprofit organizations familiar with mental health care claims.

18. The Parity Act requires health care service plans or insurers to apply specified clinical criteria and guidelines in conducting utilization review of the covered health care services and benefits and prohibits the plan or insurer from applying different, additional, or conflicting criteria than the criteria and guidelines in the specified sources. Senate Bill 855 recognizes Level of Care Utilization System, Child and Adolescent Level of Care Utilization System, Child and Adolescent Service Intensity Instrument, and Early Childhood Service Intensity Instrument (LOCUS/CALOCUS and CASII/ECSII) criteria for mental health disorders as "prime examples of level of care criteria that are fully consistent with generally accepted standards of mental health and substance use care."

19. F.F. was diagnosed with, *inter alia,* major depressive disorder, social anxiety disorder, and neurodevelopmental disorder.

20. F.F. has a long history of depression. In 2018, at the age of eleven, she began expressing suicidal impulses. She began seeing a therapist and a psychiatrist.

21. Despite ongoing treatment, F.F.'s symptoms worsened. She suffered from frequent panic attacks during which she would shake, perspire, and become incapable of breathing or talking. She withdrew from the world, stopped engaging with friends and family, and quit her extracurricular activities.

22. F.F.'s behavior became increasingly dangerous. She ran away from home. She actively made plans for suicide.

23. F.F.'s parents discovered that F.F. had been cutting herself daily. When F.F.'s physician examined her, F.F. had approximately 100 cuts, all over her body. Some of these cuts were deep and near arteries.

24. At the recommendation of her treatment providers, F.F. was admitted to Sunrise Residential Treatment Center ("Sunrise").

25. Throughout her treatment at Sunrise, F.F. continued to engage in self-harm behavior and have strong suicidal urges.

26. At all times relevant, F.F.'s treatment at Sunrise was medically necessary, based upon the reasoned medical opinions of her treaters.

COMPLAINT                                                                                                                                    CASE NO.

27. Plaintiff filed claims for mental health benefits pursuant to the terms of the Plan for F.F.'s treatment at Sunrise.

28. Anthem denied Plaintiff's claims for treatment at Sunrise.

29. Plaintiff timely appealed Anthem's denials of F.F.'s claims for treatment at Sunrise.

30. Anthem denied Plaintiff's appeals.

31. Not only were Anthem's denials unreasonable in light of the obvious medical necessity for F.F.'s ongoing mental health care, but the denials also violated the California Mental Health Parity Act, as well as the Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA"), which alone provided a basis for approving all of the care for F.F. that is at issue herein.

32. In denying Plaintiff's claim for care and treatment for F.F. at Sunrise, in violation of SB 855, Anthem, by and through the Plan, used MCG "level of care guidelines" that are unfair and biased against approving claims for residential treatment such as are at issue herein, and that do not reflect reasonable standards in the medical community.

33. The level of care guidelines used by Anthem, by and through the Plan, to deny F.F.'s care fall below reasonable standards of care in the medical community, as explained by the court in *Wit v. United Behavioral Health*, 2019 WL 1033730 (N.D.Cal. March 5, 2019).

34. Anthem, by and through the Plan, breached the generally accepted standard of care herein by failing to accept and consider that treatment is not limited to simply alleviating an individual's current mental health symptoms, and by ignoring and failing to consider the long-term, chronic nature of F.F.'s mental health needs.

35. Anthem, by and through the Plan, breached the generally accepted standard of care herein by failing to accept and consider that effective treatment of co-morbid, or co-occurring behavioral health disorders requires consideration of the interaction of these disorders, and the implications of these disorders on determining the proper and appropriate level of care.

36. Anthem, by and through the Plan, breached the generally accepted standard of care herein by failing to accept and consider that where there is ambiguity over the proper level of care, that practitioners should err on the side of caution and should place patients in the higher level of care.

37. Anthem, by and through the Plan, breached the generally accepted standard of care herein by improperly focusing on acute symptomology and failing to consider that the same level of care is needed when an acute crisis has passed, and by failing to consider the likelihood of regression and risk of further acute symptomology.

38. Anthem's use, by and through the Plan, of insurer-generated, proprietary guidelines violated the California Mental Health Parity Act.

39. As a result, Plaintiff was forced to pay for F.F.'s care and treatment at Sunrise from her own personal funds.

40. Plaintiff has exhausted all administrative remedies regarding the denial of F.F.'s mental health benefits.

## CLAIMS FOR RELIEF
### FIRST CAUSE OF ACTION
**Recovery of Benefits Due Under an ERISA Benefit Plan**
**(Against ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY dba ANTHEM BLUE CROSS; GOOGLE LLC WELFARE BENEFIT PROGRAM; GOOGLE LLC; DOES 1-10; Enforcement and Clarification of Rights, Prejudgment and Post Judgment Interest, and Attorneys' Fees and Costs, Pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B))**

41. Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

42. ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due under the terms of the plan and to enforce Plaintiff's rights under the terms of a plan.

43. At all relevant times, Plaintiff and her daughter, F.F. were insured under the health care plan at issue herein, and Plaintiff's daughter, F.F., met the covered health services and medical necessity criteria for treatment required under the terms and conditions of the Plan.

44. By denying Plaintiff's mental health claim, Defendants have violated, and continue to violate, the terms of the Plan, the terms of ERISA, and Plaintiff's rights thereunder.

45. The provisions of an ERISA plan should be construed so as to render none nugatory and to avoid illusory promises.

## SECOND CAUSE OF ACTION
### Breach of Fiduciary Duty Under ERISA § 502(a)(3), 29 U.S.C. Section 1132(a)(3)
### (against Defendants ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY dba ANTHEM BLUE CROSS; GOOGLE LLC WELFARE BENEFIT PROGRAM; GOOGLE LLC; DOES 1-10)

46. Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

47. At all material times herein, Defendants, and each of them, were fiduciaries with respect to their exercise of authority over the management of the Policy, disposition of Plan assets, and administration of the Policy.

48. Plaintiff asserts that a claim for benefits due under the Policy does not provide him with an adequate remedy at law in light of Defendants' continuing course of conduct in violating the terms of the Policy and applicable law as described below.

49. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires fiduciaries to discharge their duties solely in the interests of employee benefit plan participants and beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable expenses of administering the plan.

50. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires fiduciaries to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

51. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), requires fiduciaries to discharge their duties in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA.

52. In committing the acts and omissions herein alleged, Defendants breached their fiduciary duties in violation of ERISA §§ 404(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1104(a)(1)(A)(B) and (D).

53. At all material times herein, Defendants, and each of them, violated these duties by, *inter alia,* the following:

A. Consciously, unreasonably, intentionally, and without justification, failing to disclose to plan participants their use of MCG "level of care guidelines" that are unfair and biased against approving claims for residential treatment such as are at issue herein, and that do not reflect reasonable standards in the medical community;

B. Consciously, unreasonably, intentionally, and without justification, violating California's Mental Health Parity Act, Health & Safety Code §1374.72, as well as the Federal Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA") which specifically require that health care plans provide medically necessary diagnosis, care and treatment for the treatment of specified mental health illnesses at a level equal to the provision of benefits for physical illnesses;

C. Consciously and unreasonably failing to investigate all bases upon which to pay and honor Plaintiff's claim, and related claims and/or similar claims, for benefits, and consciously and unreasonably failing to investigate all bases to support coverage fairly and in good faith and refusing to give Plaintiff's interests or the interests of the Plan at least as much consideration as they gave their own;

D. Consciously and unreasonably asserting improper bases for denying full payment of Plaintiff's claim, and related claims and/or similar claims, for mental health care benefits;

E. Consciously and unreasonably refusing to pay benefits based upon a claimed failure by its insureds to complete an appeal within time constraints, with full knowledge that its insureds were not provided with a denial letter that triggered the beginning of the time constraint;

F. Consciously and unreasonably interpreting the Plan in a manner designed to deny and minimize benefits and in a manner that thwarts the reasonable expectations of the Plan's beneficiaries and participants in order to maximize its own profits and minimize the benefits that it pays claimants;

G. Consciously and unreasonably refusing to pay Plaintiff's claim, and related claims and/or similar claims, with the knowledge that Plaintiff's claim and similar claims are

payable and with the intent of boosting profits at Plaintiff's and other claimants' expense; and

H.      Consciously and unreasonably failing to follow the terms of the Plan and applicable regulations governing the administration of claims, and the review of denied claims.

54.     As a result of Defendants' breaches of fiduciary duty, Plaintiff has been harmed, and the Defendants have been permitted to retain assets and generate earnings on those assets to which Defendants were not entitled.

55.     Plaintiff further requests judgment permanently enjoining Defendant Anthem Blue Cross Life and Health Insurance Company dba Anthem Blue Cross from ever again serving as a fiduciary with respect to the Plan, together with attorneys' fees and cost; and enjoining the Plan from using level of care guidelines that fall below reasonable standards in the medical community, either as written or as applied, or both. In addition, Plaintiff seeks appropriate equitable relief from all Defendants, and each of them, including an order by this Court that, based upon principles of waiver and/or estoppel, Plaintiff is entitled to benefits in the amount of the cost of F.F.'s treatment at Sunrise. In addition, Plaintiff seeks disgorgement of profits, make-whole relief, and that Plaintiff be placed in the position that she would have been in had she been paid the full amount of benefits to which she is entitled, including, without limitation, interest, attorneys' fees and other losses resulting from Defendants' breach.

**PRAYER FOR RELIEF**

**AS TO ALL DEFENDANTS**

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

56.     Declare that Defendants, and/or each of them, violated the terms of the Plan by failing to provide mental health benefits;

57.     Order Defendants, and/or each of them, to pay the mental health benefits due, together with prejudgment interest on each and every such benefit payment through the date of judgment at the rate of 9% compounded;

**COMPLAINT**                                                                                                                **CASE NO.**

58. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g), 29 U.S.C. Section 1132(g);

59. Provide such other relief as the Court deems equitable and just.

**WHEREFORE,** Plaintiff prays that the Court grant the following relief as to the SECOND CAUSE OF ACTION:

60. An Order that Defendant cease using its current level of care guidelines to evaluate claims involving mental health treatment;

61. An Order that, to the extent Defendant evaluates mental health claims using level of care guidelines, that it use publicly available level of care guidelines;

62. An Order that, to the extent Defendant uses level of care guidelines to evaluate mental health claims, that Defendant provide copies of the guidelines to all claimants whose claims are denied, along with the specific section(s) of the guidelines it relied upon;

63. An Order requiring each fiduciary found liable for breaching his/her/its duties to disgorge any profits made through the denial of medically necessary claims through the use of inconsistent care guidelines. This includes, but is not limited to, any violation of ERISA §§ 404 and 406;

64. For appropriate equitable relief pursuant to 29 U.S.C. §§ 1132(a)(2) and (a)(3), including but not limited to, a declaration of Plaintiff's rights to a full and fair review under ERISA, and a declaration of Plan participants' and beneficiaries' rights to a full and fair review;

65. Removal of Anthem Blue Cross Life and Health Insurance Company dba Anthem Blue Cross as a Plan fiduciary;

66. For surcharge relief;

67. An injunction against further denial of Plaintiff's benefits pursuant to 29 U.S.C. §§ 1132(a)(3);

68. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g), 29 U.S.C. Section 1132(g);

69. Provide such other relief as the Court deems equitable and just.

Dated: February 16, 2022              Respectfully submitted,

**DL LAW GROUP**

By: */s/ David M. Lilienstein*
David M. Lilienstein
Katie J. Spielman
Attorneys for Plaintiff, ANNA F.